IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| COLONY INSURANCE COMPANY, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 8:21-cv-00987-PX |
| PROGRESSIVE CASUALTY INSURANCE COMPANY, | * | |
| Defendant. | * | |

\*\*\*

## MEMORANDUM OPINION

Plaintiff Colony Insurance Company ("Colony") filed suit against Defendant Progressive Casualty Insurance Company ("Progressive"), seeking reimbursement from Progressive for a settlement payment it made for a personal injury claim. ECF No. 1. Presently pending before the Court are the parties' cross motions for summary judgment. The motions are fully briefed and no hearing is necessary. D. Md. Local R. 105.6. For the reasons set forth below, Colony's motion is GRANTED in pertinent part and Progressive's motion is DENIED.

**I. Background**

On May 23, 2019, a Lawson Concrete truck was involved in an accident in Bethesda, Maryland. ECF No. 1. at ¶ 7; ECF No. 23-3 at 4. The truck had been pumping concrete through its permanently attached "auger/chute mechanism" into a sub-pump operated by A&D Construction. ECF No. 1. at ¶ 8; ECF No. 23-3 at 5–6. After the truck finished pumping, Terrance White, a Lawson Concrete employee, used the truck's control board to lift the auger into a locked position for transport. ECF No. 23-5 at 2. As the auger rose to its upright position, it suddenly disengaged and fell, striking A&D employee Jose Rodriguez in the head, shoulder, and right hand. ECF No. 1 at ¶ 8; ECF No. 23-9 at 2.

Mr. Rodriguez filed a claim for compensation for his injuries against Lawson Concrete. ECF No. 23-8; ECF No. 23-9.  Lawson Concrete insured the truck with Progressive under a Commercial Auto Policy (the "Progressive Policy") and with Colony under its Commercial General Liability Policy (the "Colony Policy").  ECF No. 1 at ¶ 1.  Progressive denied coverage for the claim under the policy's Operations Exclusion which excludes from coverage bodily injury "arising out of the operation of . . . machinery or equipment that is on, attached to, or part of, a land vehicle that would qualify under the definition of **mobile equipment** if it were not subject to a compulsory or financial responsibility law where it is licensed or principally garaged."  ECF No. 23-7 at 2 (emphasis in original); ECF No. 1 at ¶¶ 9–10.  Because Mr. Rodriguez had been injured by the auger attached to the concrete truck, Progressive took the position that the vehicle itself fit the definition of "mobile equipment" that triggered the enumerated exclusion.  ECF No. 23-7 at 2.

Since Progressive denied coverage, Lawson Concrete next tendered Mr. Rodriguez's claim to Colony and made a settlement demand.  ECF No. 1 at ¶¶ 11, 14; ECF No. 23-9.  In turn, Colony and Lawson Concrete tendered the demand to Progressive, ECF No. 1. at ¶ 15; ECF No. 23-10, and again Progressive denied coverage, citing to the policy's Operations Exclusion.  ECF No. 1 at ¶ 15; ECF No. 23-11.  Colony and Mr. Rodriguez settled the claim for $195,000 in exchange for Mr. Rodriguez's release of any remaining claims to Colony.  ECF No. 1 at ¶ 17.  Lawson Concrete also assigned Colony its rights related to Mr. Rodriguez's claim and settlement under the Progressive Policy.  *Id.* at ¶ 18; ECF No. 23-15.

On April 21, 2021, Colony filed this subrogation and contribution action.  In Count I, Colony alleges that under the plain language of the Progressive Policy, the claim is covered, and more to the point, the claim does not fall under the Operations Exclusion.  Thus, the insured—now Colony as the subrogee—is entitled to full coverage of the claim.  ECF No. 1 at ¶¶ 34–46.  Count

II avers that if coverage is proper, and if the claim is covered under both the Colony and Progressive policies as primary and co-primary insurers, then at a minimum, Colony is entitled to contribution from Progressive toward the claim. *Id.* at ¶¶ 47–48.

The parties now cross move for summary judgment. Colony maintains that summary judgment should be granted in favor of coverage because the asserted Operations Exclusion does not apply. ECF No. 23-1 at 17–21. Progressive, on the other hand, contends that summary judgment in its favor must lie because the incident falls under the Operations Exclusion. ECF No. 24-1 at 4–11. Because the resolution of both motions turns on the interpretation of the Operations Exclusion as applied to undisputed facts, the Court considers both motions in tandem.

## II.     Standard of Review

Summary judgment is appropriate when the Court, viewing the evidence in the light most favorable to the non-moving party, finds no genuine disputed issue of material fact, entitling the movant to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)). "A mere scintilla of proof . . . will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). Importantly, "a court should not grant summary judgment 'unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances.'" *Campbell v. Hewitt, Coleman & Assocs., Inc.*, 21 F.3d 52, 55 (4th Cir. 1994) (quoting *Phoenix Sav. & Loan, Inc. v. Aetna Casualty & Sur. Co.*, 381

F.2d 245, 249 (4th Cir. 1967)).  Where the party bearing the burden of proving a claim or defense "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment against that party is likewise warranted.  *Celotex*, 477 U.S. at 322.

"Where, as here, cross motions for summary judgment are filed, a court must 'evaluate each party's motion on its own merits, taking care [in each instance] to draw all reasonable inferences against the party whose motion is under consideration.'"  *Snyder ex rel. Snyder v. Montgomery Cty. Pub. Sch.*, No. DKC-08-1757, 2009 WL 3246579, at *5 (D. Md. Sept. 29, 2009) (quoting *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987)).  The Court must deny both motions if it finds a genuine issue of material fact precludes resolution, "[b]ut if there is no genuine dispute and one or the other party is entitled to prevail as a matter of law, the court will render judgment."  10A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2720 (4th ed. 2020).

**III.    Analysis**

To resolve the cross motions on the question of coverage, the Court must first interpret the Progressive Policy terms and exclusions.  Under Maryland law, "the interpretation of an insurance policy is governed by the same principles generally applicable to the construction of other contracts."  *Mitchell v. AARP*, 140 Md. App. 101, 116 (2001); *Megonnell v. United Servs. Automobile Ass'n*, 368 Md. 633, 655 (2002) (explaining that "ordinary principles of contract interpretation apply.").  Accordingly, the Court must "apply the terms of the contract itself" to ascertain "the scope and limitations of the insurance coverage."  *Cole v. State Farm Mut. Ins. Co.,* 359 Md. 298, 305 (2000).  Unless otherwise stated in the policy, the Court gives policy terms the plain, ordinary, and accepted meanings "as defined by what a reasonably prudent lay person

4

would understand them to mean." *Universal Underwriters Ins. Co. v. Lowe*, 135 Md. App. 122, 137 (2000) (quoting *Kendall v. Nationwide Ins. Co.*, 348 Md. 157, 166 (1997)).

The Court must also read each policy as a whole, interpreting terms in such a way as to avoid rendering any provisions superfluous. *Nautilus Ins. Co. v. 200 W. Cherry St., LLC*, 383 F. Supp. 3d 494, 510 (D. Md. 2019). When construing provisions that exclude coverage, the Court must "take special care to interpret [such] provisions narrowly," *Cornerstone Title & Escrow, Inc. v. Evanston Ins. Co.*, 555 F. App'x 230, 235 (4th Cir. 2014), and "in favor of a finding of coverage." *Megonnell*, 368 Md. at 656 (quoting Eric Mills Holmes & Mark S. Rhodes, *Holmes's Appleman on Insurance, 2d* 276–81 (Eric Mills Holmes ed., vol. 2 § 7.2 1996)). The insurer has the burden of establishing that an exclusion applies. *Cornerstone Title & Escrow, Inc.*, 555 F. App'x at 235.

**A. Whether the Claim is Excluded Under the Progressive Policy**

Both Colony and Progressive agree that liability coverage for Mr. Rodriguez's accident is triggered under Progressive's policy. ECF No. 24-1 at 4; ECF No. 23-1 at 21–23. The policy states Progressive will pay damages "for **bodily injury**, **property damage**, and **covered pollution cost or expense**, for which an **insured** becomes legally responsible because of an **accident** arising out of the ownership, maintenance or use of that **insured auto**." ECF No. 23-16 at 13 (emphasis in original). An "[**i**]**nsured auto**" is "[a]ny **auto** specifically described on the **declarations page**," *id.* at 9 (emphasis in original), and here, the Lawson Concrete truck is listed on the policy's declarations page as "2007 Strg LT9" with VIN number 2FZHAZCV87AW82476, *id.* at 3; ECF No. 1 at ¶ 22.

Progressive argues, however, the claim is excluded from coverage under the policy's Operations Exclusion. The exclusion states that coverage does not apply to "[**b**]**odily injury** . . .

5

arising out of the operation of . . . machinery or equipment that is on, attached to, or part of, a land vehicle that would qualify under the definition of **mobile equipment** . . . ." ECF No. 23-16 at 18 (emphasis in original). Progressive further contends that because the Lawson Concrete truck meets the definition of "mobile equipment" because it is "self-propelled and used primarily for purposes other than transportation of persons or cargo," the policy exclusion applies. *Id.* at 12; ECF No. 24-1 at 5. The truck meets the mobile equipment definition, says Progressive, because the truck's primary purpose is to "mix" the concrete. ECF No. 24-1 at 5.

But indisputably, the "mixing" of the concrete is part and parcel of its transportation of the material to its ultimate destination. As explained by the Lawson Concrete truck driver, Brian Alford, before every concrete delivery, the concrete ingredients, sand and stone, are loaded into the truck and then continuously mixed while the truck is *en route* to the job site where the concrete is ultimately poured. ECF No. 23-3 at 14. The purpose of "mixing" the concrete is to ensure uniform consistency of the mixture as it is delivered so that it can be poured properly for the customer. *See id.* at 16. Thus, the "mixing" of the concrete is a necessary and integral part of its transport and delivery.

Because the facts make clear that the concrete mixture is transported from one location to another, the only remaining question is whether the concrete can be considered "cargo" such that the Operations Exclusion does not apply. The Progressive Policy does not define "cargo" and so the Court applies its ordinary and accepted meaning. *Universal Underwriters Ins. Co.*, 135 Md. App. at 137; *Valliere v. Allstate Ins. Co.*, 324 Md. 139, 142 (1991). "Cargo" is plainly defined as "goods or merchandise conveyed in a ship, airplane, or vehicle."[1] *Pacific Indem. Co. v. Interstate Fire & Cas. Co.*, 302 Md. 383, 388 (1985) (dictionary definition is the meaning a "reasonably

---

[1] *Cargo*, Merriam-webster.com, https://www.merriam-webster.com/dictionary/cargo (last visited Mar. 14, 2023).

prudent layperson would attach" to the policy term). The concrete is certainly a "good" that was "conveyed" by the Lawson Concrete truck to the job site. ECF No 23-3 at 4–5. Accordingly, on these facts, no genuine dispute exists that the Lawson Concrete truck is a "land vehicle" primarily used for the transportation of cargo. From this, the Court concludes that the Operations Exclusion does not apply. Nor does Progressive suggest any other policy exclusion is triggered. Because the claim is otherwise covered under plain and unambiguous terms of the Progressive Policy, summary judgment is granted in Colony's favor as to coverage. *Cf. Cornerstone Title & Escrow, Inc.*, 555 F. App'x at 235.

### B. Equitable Subrogation

The Court next turns to whether Progressive must reimburse Colony for the total settlement amount under the doctrine of equitable subrogation. Colony contends that as a matter of law it has stepped into the shoes of the settling parties, and thus Progressive must pay the entirety of the claim to it. ECF No. 23-1 at 24. "Equitable subrogation arises by operation of law when a person pays the debt of another under such circumstances that equity entitles that person to reimbursement." *Fireman's Fund Ins. Co. v. Cont'l Ins. Co.*, 308 Md. 315, 319 (1987). To prevail under the doctrine, Colony as subrogee must show "(1) the existence of a debt or obligation for which a party, other than the subrogee, is primarily liable, which (2) the subrogee, who is neither a volunteer nor an intermeddler, pays or discharges in order to protect his own rights and interests." *Gov't Emps. Ins. Co. v. Taylor*, 270 Md. 11, 21 (1973) (quoting *George L. Schnader, Jr., Inc. v. Cole Bldg. Co.*, 236 Md. 17, 23 (1964)). Where two insurance policies potentially provide coverage, an "excess insurer" may recover defense costs and judgments "from a primary insurer that refused to defend the insured." *Selective Way Ins. Co. v. Nationwide Prop. & Cas. Ins. Co.*, 242 Md. App. 688, 733 (2019), *aff'd,* 473 Md. 178 (2021).

To resolve whether Colony has taken on this debt otherwise owed by Progressive, the Court must ascertain whether each policy provides primary or excess coverage. Regarding the Progressive Policy, it clearly provides primary coverage. *See* ECF No. 23-16 at 29. The policy unambiguously states that "[f]or any **insured auto** that is specifically described on the **declarations page**, this policy provides primary coverage." *Id.* (emphasis in original); *see Selective Way Ins. Co.*, 242 Md. App. at 734 (plain language of policy determines "whether one liability insurer is primary with respect to another.").

Next, as to the Colony Policy, Colony contends that coverage is excluded and so Progressive must pay the entirety of the claim. Although, the Colony Policy excludes coverage for any "[b]odily injury . . . arising out of the . . . use . . . of any . . . 'auto,'" ECF No. 23-17 at 21, the exclusion also enumerates "exceptions" to its applicability. One such exception is for bodily injury arising out of "[t]he operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of 'mobile equipment.'" *Id.* Paragraph f.(3) further defines as mobile equipment "pumps," and no meaningful dispute exists that the Lawson Concrete truck "pumps" the concrete from its truck through the auger. *Id.* at 32. Accordingly, the exception to the exclusion plainly applies.

Colony, however, urges the Court to conclude that the exception is inapplicable because the "pumping equipment" was *not operating* when Mr. Rodriguez was injured. ECF No. 23-1 at 19, 25. The Colony Policy does not define the term "operation," and so the Court applies its plain and ordinary meaning. "Operation" means "the quality or state of being functional or operative." *Operation*, Merriam-webster.com, https://www.merriam-webster.com/dictionary/operation (last visited Mar. 14, 2023). From the undisputed events leading to Mr. Rodriguez's injury, clearly the auger—the apparatus that pumps the concrete—was functioning at the time of the injury. Part of

the auger's function is to rise into a locked position so that the truck can move; after the concrete was deposited onto the property and as the auger was being raised, it disengaged and fell, striking Mr. Rodriguez. ECF No. 23-3 at 5–6. Thus, the auger had been "operating" when it caused Mr. Rodriguez's injury, and so the exception to the exclusion is triggered.[2]

Colony alternatively argues that if the claim is covered under its policy, it is as "excess" coverage, available only if the claim exceeds the maximum available insurance under the Progressive Policy. ECF No. 23-1 at 25. The Court agrees. The Colony Policy clearly states that "[t]his insurance is primary except when Paragraph **b.** below applies." ECF No. 23-17 at 29. Paragraph b. in turn states that the "insurance is excess over . . . [a]ny of the other insurance, whether primary, excess, contingent or on any other basis . . . [i]f the loss arises out of the maintenance or use of . . . 'autos' . . . to the extent not subject to" the exclusion already discussed. *Id.* Because the Court has already determined that the policy exclusion in question is inapplicable, then according to the policy's plain terms, the coverage is excess.

However, this does not conclusively establish how the coverage between the Progressive and Colony policies shall work. This is because the Progressive Policy states, "[i]f coverage under more than one policy applies on the same basis, either excess or primary, **we** will pay only **our** proportionate share. **Our** proportionate share is the proportion that the Limit of Liability of this policy bears to the total of the limits of all the Coverage Forms and policies covering on the same

---

[2] As to whether the Colony Policy excludes coverage, Progressive simply returns to its argument that its Operations Exclusion reaches "mobile equipment," and that under a different subsection of the Colony Policy, coverage applies to injury arising from the operation of "mobile equipment." ECF No. 24-1 at 11-12. Accordingly, Progressive has waived all other arguments regarding the interpretation of the Colony Policy. *See Hollingsworth v. Chateau Bu-De, LLC*, 987 F. Supp. 2d 629, 641 (D. Md. 2013) (finding that defendant had waived an argument it failed to raise during discovery); *Stenlund v. Marriott Int'l, Inc.*, 172 F. Supp. 3d 874, 887 (D. Md. 2016) (explaining that because plaintiff failed to respond to defendant's argument regarding the application of Panama law, plaintiff conceded the argument); *Hardison v. Healthcare Training Sols., LLC*, No. PWG-15-3287, 2017 WL 2276840, at *1 n.3 (D. Md. May 25, 2017) (explaining that it would be appropriate for the court to treat an argument as conceded where a party waives its "opportunity to respond to the other side's argument.").

basis." ECF No. 23-16 at 29 (emphasis in original). But the Colony Policy states that "[w]hen this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that *exceeds* the sum of . . . [t]he total amount that all such other insurance would pay for the loss in the absence of this insurance." ECF No. 23-17 at 29 (emphasis added).

The tension between the two policies is clear. Progressive announces it will pay only a "proportionate share" even where other applicable insurance is "excess"; whereas the Colony excess coverage, under its policy terms, is triggered only after the claim exceeds the Progressive Policy limits. The parties offer little help in resolving this tension. Colony merely acknowledges the issue in a footnote (ECF No. 23-1 at 26 n.6.), and Progressive does not address it at all.

Fortunately, Maryland courts interpreting similar provisions have concluded that "[a]n excess clause always prevails over . . . a pro rata clause" so that in this circumstance, the primary coverage must be exhausted before the excess coverage is triggered. *Nat'l Indem. Co. v. Cont'l Ins. Co.*, 61 Md. App. 575, 579 (1985); *Ryder Truck Rental, Inc. v. Schapiro & Whitehouse, Inc.*, 259 Md. 354, 361–62 (1970) ("[W]e agree, when a pro rata clause clashes with an excess clause, the excess insurance is not 'other insurance' . . . its pro rata clause makes it the primary insurer up to the limits of its policy."); *Nolt v. U.S. Fid. & Guar. Co.*, 329 Md. 52, 60 (1993) ("Where an excess clause from one policy conflicts with a *pro rata* clause from a concurrently effective policy, we disregard the *pro rata* clause in favor of the excess clause."). The Court adopts that reasoning here.

The Progressive Policy limits are $2 million and the settlement payment is $195,000. ECF No. 1 at ¶¶ 17, 19. No facts suggest that the Progressive Policy limits are otherwise exhausted. The settlement amount falls within the Progressive Policy limits, and so Colony's excess policy is not triggered. Progressive is, in turn, liable for the entire claim. Lastly, because the Court grants

summary judgment in favor of Colony on its equitable subrogation claim and concludes that Progressive is liable for the entire claim amount, the Court denies as moot Progressive's cross motion for summary judgment in its favor on Colony's contribution claim (Count II). *See id.* ¶¶ 47–48.

**IV.     Conclusion**

For the foregoing reasons, Colony's motion for summary judgment is granted as to Count I and denied as moot as to Count II. Progressive shall pay to Colony, as subrogee, the entirety of the settlement amount, $195,000. A separate Order will follow.

|  |  |
|---|---|
| 3/29/2023 | /S/ |
| Date | Paula Xinis<br>United States District Judge |